IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and ARTHUR H. BUNTE, Jr., as Trustee, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHERN ILLINOIS TRANSIT, INC., an Illinois corporation, <br><br> Defendant. | Judge: Ronald A. Guzman <br><br> Magistrate Judge: Sidney I. Schenkier <br><br> Case No. 12-CV-3461 |

## MEMORANDUM AND EVIDENCE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER OF CONTEMPT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Funds" or "Central States") and Arthur H. Bunte, Jr., as trustee, (collectively, the "Plaintiffs") state the following in support of their Motion for an Order of Contempt[1]:

### INTRODUCTION

This is a case involving complete disregard by a judgment debtor of a lien created by a citation to discover assets. Plaintiffs are moving to have Defendant Northern Illinois Transit, Inc.'s ("NIT") president, Linda Bushman ("Bushman"), held in contempt for ignoring a lien created by service of a citation to discover assets, and instead paying all of NIT's creditors other

---

[1] Plaintiffs' Motion for an Order of Contempt was made orally before this Court on February 28, 2014, during a hearing on Plaintiffs' Motion for Rule to Show Cause for why Linda Bushman should not be held in contempt of court. The Court entered an order allowing Plaintiffs to file the instant Memorandum and Evidence in Support of Plaintiffs' Motion for an Order of Contempt on or before March 18, 2014.

than Central States, all the while causing NIT to pay herself and her immediate family members at least $48,770.72 during the periods June 13, 2013 through June 30, 2013, and August 2013 through December 2013. Plaintiffs seek an order of contempt, holding Bushman personally liable for amounts transferred by NIT in violation of the lien created by service of Central States' citation, up to the underlying judgment amount, $113,794.74. Plaintiffs further request that this Court enter an order requiring NIT to provide an accounting of all payments made between June 13, 2013 (i.e. after service of the Citation) through the date on which Bushman's Response to this Motion is due, so that a determination can be made as to the full extent of Bushman's personal liability in this matter.

## BACKGROUND

On May 7, 2012, Plaintiffs filed a lawsuit against NIT for the collection of delinquent contributions owed to the Funds pursuant to section 502(g)(2) of ERISA, 20 U.S.C. § 1132(g)(2). On May 6, 2013, the court granted summary judgment (the "Judgment") in favor of Plaintiffs and against NIT in the amount of $113,794.74 plus attorneys' fees and costs. (Exhibit 1.)

To collect on the Judgment, Plaintiffs engaged in post-judgment discovery pursuant to Rule 69 of the Federal Rules of Civil Procedure against NIT. On May 30, 2013, the Clerk of the Court for the United States District Court for the Northern District of Illinois issued a Citation in Supplemental Proceedings to Discover Assets (the "Citation") against NIT. (Exhibit 2.) The Citation ordered Bushman, the president of NIT, to personally appear for an oral examination and to produce certain documents of NIT. (Exhibit 2.) On June 13, 2013, the Citation was served on NIT by personal service on Bushman. (Exhibit 3.)

The Citation prohibited NIT from transferring, disposing or otherwise interfering with any of its assets that were not exempt from execution consistent with 735 ILCS 5/2-1402(f)(1), and states in part as follows:

> YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from enforcement of a judgment, a deduction order or garnishment belonging to the judgment debtor or to which he or she or it may be entitled or which may hereafter be acquired by or become due to him or her or it, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until further order of the Court or termination of the proceedings, whichever occurs first. You are not required to withhold the payment of any money beyond double the amount of the judgment. On May 6, 2013 the judgment was entered in the amount of $113,794.74 and the unsatisfied balance is in the amount of $113,794.74. The Court may punish any party who violates this restraining provision as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this section, or in the amount of the value of the property transferred, whichever is lesser.

(Exhibit 2.)

In response to the Citation, NIT produced bank statements and copies of checks that it had issued from January 2009 through June 2013. The checks produced by NIT show an 18-day snapshot of time from June 13, 2013 through June 30, 2013, during which Bushman had notice of the Citation and, nevertheless, caused or permitted NIT to make more than 15 payments, totaling at least $4,973.69 to third parties, including immediate family members Steve Bushman and Jeff Bushman, in violation of the lien created by, and the prohibition against transfer contained in, the Citation. Copies of the checks produced by NIT for the period of June 13, 2013 through June 30, 2013 are attached hereto as Exhibit 4.

On August 21, 2013, Bushman appeared pursuant to the Citation for an oral examination under oath to testify as to the assets of NIT. During the Citation deposition, Bushman testified

that she and her family members are the owners of NIT, and that she is the president of NIT, the person most knowledgeable about the company, and the primary decision maker for NIT. (Exhibit 5, 25:22-24; 26: 1-3; 26:9-11; 22:2-8.) Bushman also testified that NIT is still in business. (Exhibit 5, 7:20-22.) Specifically, NIT is in the business of hauling loads of steel between shippers for ultimate use in construction projects. (Exhibit 5, 12:5-7; 16:9-13 ; 17:15-20.) Moreover, the money that NIT is earning from hauling steel loads is being used in part to make monthly payments of $1,650 in connection with a personal loan to Linda Bushman from Community State Bank. (Exhibit 5, 11:24-12:7; 8:17- 9:9.) In addition, Bushman admitted that several of the checks that had been produced in connection with the Citation were checks that she had written to make payments from NIT's bank account for her personal use. (Exhibit 5, 22:17-24; 23:1-9.)

On January 27, 2014, Plaintiffs filed a Motion for Rule to Show Cause for why Linda Bushman should not be held in contempt of court. After Plaintiffs' Motion for Rule to Show Cause was filed, NIT produced copies of its Profit and Loss statements from August 2013 through December 2013 and banking statements from the year 2013.[2] (Exhibit 6.) According to the Profit and Loss Statements, NIT has continued to receive gross trucking income each month through at least December 2013. Moreover, from at least August 2013 through December 2013, Bushman has completely ignored the lien created by service of the Citation and has continued to allow NIT to make payments, including but not limited to Bushman taking at least $17,007.03 in "Owner Draws," as well as causing NIT to pay $18,540.00 in monthly rental expenses to Bushman, and mortgage payments totaling $8,250.00, even though Bushman and not NIT is the owner of the property. (Exhibit 6 and Exhibit 5, 9:1-23; 8:13-24.) NIT's banking statements

---

[2] NIT did not produce Profit and Loss Statements for July 2013.

reflect continued business activity throughout the months of July and August 2013. Curiously, in August 2013, after a garnishment by Plaintiffs was issued to NIT's bank, (Exhibit 7), NIT's banking activity largely ceased despite the fact that NIT's Profit and Loss Statements indicate that NIT has continued operating, earned gross trucking income, and paid business expenses. (Exhibit 6.) In fact, it appears that NIT is conducting business as usual, ignoring Plaintiffs' Judgment and paying everyone except Central States (including insiders).

On February 28, 2014, during a hearing on Plaintiffs' Motion for Rule to Show Cause, this Court ordered Plaintiffs to submit a Memorandum and Evidence in support of Plaintiffs' Motion for a Finding of Contempt. In the instant brief, Plaintiffs are setting forth the applicable Illinois authority and case law for a finding of contempt and personal liability against Bushman. In addition, the Plaintiffs are seeking an order requiring NIT to provide an accounting of all payments made June 13, 2013 (i.e. after service of the Citation), so that a determination can be made as to the extent of Bushman's personal liability in this matter.

## ARGUMENT

### I.  *Bushman Should be Held in Contempt of Court for Violating the Citation.*

In light of Linda Bushman's continued payments of NIT's day-to-day business expenses after June 13, 2013, as well as her personal expenses, Bushman violated the Citation lien and should be held in contempt of court. According to Rule 69 of the Federal Rules of Civil Procedure, post-judgment collection proceedings of civil judgments entered by federal courts are governed by the law of the state in which the district court sits. As such, this matter is governed by Illinois law. Pursuant to 735 ILCS 5/2-1402(m)(1), the service of a citation to discover assets creates a lien on the non-exempt property of the judgment debtor that is perfected on the date the citation is served. *Mendez v. Republic Bank*, 725 F. 3d 651, 653 (7th Cir. 2013). Accordingly,

when such a citation is served, "it acts as an injunction that prohibits the person to whom it is directed from disposing of the judgment debtor's assets to avoid paying the judgment." *Fox Valley Laborers Fringe Benefit Funds v. Pride of the Fox Masonry and Expert Restorations*, No. 94 C 4289, 1996 WL 137654, at *8 (N.D. Ill. March 25, 1996) (Exhibit 8.)

A party served with a citation can be held in contempt of court if: "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1114 (N.D. Ill. 2012). The court does not have to find that the violation was willful, and may find a party in civil contempt if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Id.*

Here, the Citation set forth an unambiguous command prohibiting the transfer or disposal of NIT's funds up to the amount of the Judgment. (Exhibit 2.) The Citation explained that any party who violates the Citation could be held in contempt of court and face personal liability for an amount up to the amount of the Judgment. (Exhibit 2.) Bushman ignored and violated the Citation by authorizing payments from NIT's account for ordinary day-to-day business expenses after June 13, 2013 (the date on which she was served with the Citation), as well as payments to herself and her family members. (Exhibits 4-6.) Bushman did not comply with the Citation and made no reasonable or diligent effort to comply. In fact, it appears that NIT conducted business as usual, completely ignored the lien created by the Citation, and paid all creditors except Central States. Thus, due to Bushman's disregard of the Citation prohibiting the transfer of NIT's assets, this Court should find Bushman in contempt in accordance with 735 ILCS 5/2-1402(f)(1).

> II.  ***Bushman Should be Held Personally Liable for the Amounts Transferred up to the Amount of the Judgment, Plus the Plaintiffs' Attorneys' Fees and Costs in Connection with the Instant Motion.***

In addition to being held in contempt of court for her violation of the Citation, Bushman should also be held personally liable for the amount that was improperly transferred, up to the amount of the Judgment. Pursuant to 735 ILCS 5/2-1402(f)(1) and Illinois Supreme Court Rule 277(h), any person who fails to obey a citation may be held in contempt, and the court may enter judgment against the party in the amount of the unpaid portion of the judgment or in the amount of the value of the property transferred, whichever is lesser. *Shales v. Lanas Constr., Inc.*, No. 07 C 2970, 2010 WL 3842362, at *4 (N.D. Ill. Sept. 24, 2010) (Exhibit 9.)

Courts in this district have consistently held officers personally liable for the amounts transferred, up to the judgment amounts, based on disregard for citations. For example, in *Laborers Pension Fund v. A & C Environmental, Inc.*, No. 99 C 8300, 2005 WL 994525, at *2 (N.D. Ill. April 19, 2005) (Schenkier, Magistrate J.) (Exhibit 10), this Court held a judgment debtor's corporate officer in contempt and personally liable based on the judgment debtor's non-exempt use of funds to pay ongoing business expenses. Citing *City of Chicago v. Air Auto Leasing Co.,* 697 N.E.2d 788 (Ill. App. 1998), this Court noted that there is no statutory exception for transfers made in the ordinary course of business. *A & C. Envtl.*, 2005 WL 994525 at *2. Indeed, "[u]nder Illinois law, corporate officers are obligated to obey judicial orders directed at their corporations, and are liable when they permit the corporation to make non-exempt payments in violation of the citation." *Id.*, *citing Air Auto Leasing Co.,* 697 N.E.2d at 791 (internal quotations omitted).

In *Air Auto Leasing*, an officer of the corporate judgment debtor made payments of ordinary business expenses, including utilities and payments from the payroll account after a

citation had been served. 697 N.E.2d at 791. However, the court noted that the fact that the payments were made for proper corporate purposes is irrelevant in determining liability. *Id.* at 792.

Likewise, in *Laborers Pension Fund v. Dominic Jr., Inc.*, No. 02 C 3321, 2003 WL 21310282, at *3 (N.D. Ill. June 5, 2003) (Exhibit 11), the president of a corporation was held personally liable for violating a citation lien. Although the judgment debtor argued that the court should create an equitable exception for the amounts paid to employees, the court rejected the judgment debtor's argument. *Id.* The court also noted that while some of the checks paid by the judgment debtor appeared to have been for business purposes, others were questionable, such as checks issued to department stores, as well as checks payable to "cash." *Id.* at *3.

Moreover, in *Fox Valley Laborers Fringe Benefit Funds,* a corporate officer was held personally liable up to the amuont of the judgment, for transferring a judgment debtor's assets to another company while a citation was in place. 1996 WL 137654 at *9. The corporate officer was also ordered to pay the costs, expenses, and attorneys' fees that were incurred by the judgment creditor to prosecute the action. *Id.* at *12. Indeed, pursuant to 735 ILCS 5/2-1402(h), courts may award attorneys' fees and costs incurred in post-judgment proceedings regarding transfers of funds in violation of citations. *Shales*, 2010 WL 3842362, at *7. (Exhibit 9.)

Thus, in this case, pursuant to 35 ILCS 5/2-1402(f)(1) and Illinois Supreme Court Rule 277(h), Bushman should be held personally liable for authorizing the disbursement of NIT's funds after June 13, 2013, when the Citation was served upon Bushman and the lien went into effect. Specifically, Bushman should be held personally liable for all amounts paid or transferred by NIT after June 13, 2013. In addition, Bushman should be held liable for the attorneys' fees and costs that were incurred by the Plaintiffs in bringing this motion under 735 ILCS 5/2-

1402(h). *See Shales*, 2010 WL 3842362, at *7. (Exhibit 9.) This is not a case where a corporate officer exercised some discretion and ordered just one or two critical bills to be paid. Rather, Bushman apparently had NIT pay all creditors but Central States, including herself and family members.

### III. *NIT Should be Ordered to Provide a Complete Accounting of all Payments Made from June 13, 2013 through March 18, 2014.*

NIT has only provided information to date regarding checks written from June 12, 2013 (when the citation was served), through June 30, 2013. But according to NIT's Profit and Loss Statements from August 2013 (July 2013 Profit and Loss Statement was not provided) through December 2013, NIT continued to operate from August 2013 through at least December 2013, while Bushman and her immediate family continued to take "Owner Draws" from NIT's gross trucking income in the amount of $17,007.03, mortgage payments to Community State Bank in the amount of $8,250.00 and "Rent Expenses" to Bushman in the amount of $18,540.00. Taken together with the $4,973.69 in known checks that were written from June 13, 2013 through June 30, 2013, NIT paid at least $48,770.72 in violation of the Citation lien during the months of June 2013 and August through December 2013. (Exhibits 4 and 6.) Again, NIT's bank statements indicate that NIT's banking activity largely ceased once Plaintiffs issued the Garnishment to NIT's bank. (Exhibits 6 and 7.) Thus, Plaintiffs also request that this Court order NIT and Bushman to provide a full accounting of amounts that have been paid by NIT since June 13, 2013.

### CONCLUSION

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund, and Arthur H. Bunte, Jr., trustee, request that the Court enter an Order as follows:

(A)   That Linda Bushman is held in Contempt of Court for violating the Citation that was personally served upon her as the president of NIT on June 13, 2013;

(B)   That a judgment is entered against Linda Bushman, personally, for the lesser of: (i) the unpaid balance of the Judgment (i.e. $113,794.74); or (ii) the value of the asset(s) transferred in violation of the Citation, plus all attorneys' fees and costs incurred by the Plaintiffs in connection with this proceeding together with interest on the foregoing amounts at the rate of nine percent (9%) per annum from the date of Judgment;

(C)   That NIT is to provide a complete accounting of all payments made after June 13, 2013 (i.e. after service of the Citation); and

(D)   For such other relief deemed just and proper.

Respectfully submitted,

/s/ Emily E. Gleason
Emily E. Gleason (ARDC No.:06298395)
Attorney for Plaintiffs
Central States Funds
9377 West Higgins Road
Rosemont, IL 60018
(847) 939-2343
egleason@centralstatesfunds.org

March 18, 2014

## CERTIFICATE OF SERVICE

I, Emily E. Gleason, one of the attorneys for the Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund, and Arthur H. Bunte, Jr., certify that on the 18th day of March, 2014, I caused the foregoing Memorandum and Evidence in support of Plaintiffs' Motion for a Finding of Contempt to be filed electronically. This filing was served on all parties indicated on the electronic filing receipt via the Court's electronic filing system.

In addition, the following individual was served via UPS Overnight mail:

> Linda Bushman
> Northern Illinois Transit
> 620 E Rock Falls Road
> Rock Falls, IL 61071

    /s/ Emily E. Gleason
Emily E. Gleason
One of Central States' Attorneys