UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHERN ILLINOIS TRANSIT, INC., <br><br> Defendant. | Case No. 12 C 3461 <br><br> Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

On May 6, 2013, the Honorable Ronald A. Guzman entered a Judgment Order in the amount of $113,794.74 in favor of Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund; and Arthur H. Bunte, Jr., as trustee (collectively, "Plaintiffs" or "Central States") and against Northern Illinois Transit, Inc. ("NIT" or "Defendant") (docs. ## 40-42). On May 30, 2013, Plaintiffs issued a citation to discover NIT's assets ("Citation") (docs. ## 43, 56 at Ex. 2). Plaintiffs are presently before this Court seeking an Order of Contempt directed personally at Linda Bushman, president of NIT, for violating the Citation by disposing of NIT's assets, and holding her liable for (1) the lesser of the unpaid judgment amount of $113,794.74, or the value of the asset(s) transferred in violation of the Citation; and (2) all attorneys' fees and costs, together with interest of nine percent from the date of judgment (docs. ## 56: Motion for Rule to Show Cause; 65: Memorandum and Evidence in Support of Plaintiffs' Motion for Order of

---

[1] On May 14, 2014, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 72, 74).

Contempt ("Pl. Mem.") at 2, 10; 77: Supplemental Brief in Support of Plaintiffs' Motion for Order of Contempt ("Pl. Supp. Mem.") at 9).[2] In addition, Plaintiffs seek an order requiring NIT to provide a "complete accounting of all payments made after June 13, 2013" (Pl. Mem. at 2, 9; Pl. Supp. Mem. at 9). For the reasons that follow, we grant Plaintiffs' motion for an order of contempt holding Ms. Bushman personally liable for the unpaid judgment amount of $113,794.74, along with costs; however, we deny the motion insofar as it seeks an accounting and attorneys' fees and interest.

## I.

Federal Rule of Civil Procedure 69 provides that supplementary proceedings to enforce a monetary judgment must "accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Under Illinois law, a citation to discover assets is a supplementary proceeding that enables a judgment creditor to "discover assets or income of the debtor not exempt from the enforcement of the judgment" and to "compel[ ] the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2-1402(a). The citation may include a restraining provision that "prohibit[s] the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of the judgment." *Id.* 5/2-1402(f)(1). In addition, the service of the citation creates a lien on the non-exempt property of the judgment debtor that is perfected on the date the citation is served. *Id.* 5/2-1402(m)(1); *Mendez v. Republic Bank*, 725 F.3d 651, 653 (7th Cir. 2013). Thus, a citation "acts as an injunction that prohibits the person to whom it is directed from disposing of the judgment debtor's assets to avoid paying the judgment." *Fox Valley Laborers Fringe Benefit Funds v. Pride of the Fox*

---

[2] Plaintiffs made an oral motion for an order of contempt (doc. # 64; Pl. Mem. at 1 n.1; doc. # 76: Transcript of Proceedings (Feb. 25, 2014) at 7-8).

2

*Masonry and Expert Restorations*, No. 94 C 4289, 1996 WL 137654, at *8 (N.D. Ill. Mar. 25, 1996).

## II.

The relevant facts are not in dispute and are taken from the parties' filings and representations in court.[3] On May 7, 2012, Plaintiffs filed a lawsuit against NIT to recover delinquent contributions owed under section 502 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. On May 6, 2013, the Court granted summary judgment in favor of Plaintiffs and against NIT in the amount of $113,794.74 plus attorneys' fees and costs (docs. ## 42, 43). To collect the judgment, Plaintiffs engaged in post-judgment discovery under Federal Rule of Civil Procedure 69, and on June 13, 2013, Plaintiffs served the Citation on NIT by personal service on NIT's president, Ms. Bushman (Pl. Mem. at Ex. 3). The Citation was addressed to Linda Bushman at Northern Illinois Transit, Inc. (*Id.* at Ex. 2). It prohibited NIT from transferring, disposing, or otherwise interfering with any of its assets that were not exempt from execution consistent with 735 ILCS 5/2-1402(f)(1), and stated in pertinent part:

> *YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from enforcement of a judgment, a deduction order or garnishment belonging to the judgment debtor or to which he or she or it may be entitled or which may hereafter be acquired by or become due to him or her or it, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until further order of the Court or termination of the proceedings, whichever occurs first.* You are not required to withhold the payment of any money beyond double the amount of the judgment. On May 6, 2013 the judgment was entered in the amount of $113,794.74 and the unsatisfied balance is in the amount of $113,794.74. The Court may punish any party who violates this restraining provision as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the

---

[3]During a status hearing on May 14, 2014, Defendant agreed that the Court could decide the motion based on the evidentiary record submitted with the briefing (doc. # 73).

3

judgment and costs allowable under this section, or in the amount of the value of the property transferred, whichever is less.

(Pl. Mem., Ex. 2 at 1-2) (emphasis added).

In response to the Citation, NIT produced bank statements and copies of checks that it had issued from January 2009 through June 2013 (Pl. Mem. at 3, Ex. 4, Ex. 6). Although on June 13, 2013, Ms. Bushman was served with the Citation, fifteen checks (eight signed by Ms. Bushman), totaling $4,973.69, issued from the NIT account between June 14 and June 30, 2013 to third parties, including to family members Steve and Jeff Bushman (*Id.* at Ex. 4). In mid-July 2013, Plaintiffs sought to garnish NIT's bank account (doc. # 53).

On August 21, 2013, pursuant to the Citation, Plaintiffs deposed Ms. Bushman regarding the assets of NIT (Pl. Mem., Ex. 5). During the deposition, Ms. Bushman testified that she and her family members own NIT, and that she, as the president of the company, is the primary decision maker for NIT (*Id.* at 25:22-26:3, 26:9-11, 22:2-8). She explained that NIT was continuing to do business, hauling loads of steel between shippers for use in construction projects and that the income NIT generated was being used in part to make monthly payments of $1,650 in connection with a personal loan to Ms. Bushman from Community State Bank (*Id.* at 7:20-22, 12:5-7, 16:9-13, 17:15-20, 11:24-12:7, 8:17-9:23). In addition, Ms. Bushman stated that she had written several of the NIT checks that were produced in response to the Citation for her personal use (*Id.* at 22:17-23:9).

On January 27, 2014, Plaintiffs filed a Motion for Rule to Show Cause why Ms. Bushman should not be held in contempt of court (doc. # 56). After the motion was filed, NIT produced copies of its Profit and Loss ("P&L") statements from August 2013 through December 2013[4] and monthly bank statements from 2013 (Pl. Mem. at 4 & Ex. 6). The P&L statements

---

[4] NIT did not produce a P&L statement for July 2013.

4

included NIT's gross income for each month through December 2013. In addition, the P&L statements from August 2013 through December 2013, reflect payments for Ms. Bushman in the form of "Owner Draws" ($17,007.03), rental expenses ($18,540.00), and mortgage payments ($8,250.00) (*Id.*).[5] The NIT bank statements showed continued business activity through July and August 2013, but in August 2013, after Plaintiffs issued a garnishment summons to NIT's bank (doc. # 53; Pl. Mem. at Ex. 7), NIT's bank activity all but ceased (Pl. Mem. at Ex. 6). After July 2013, NIT's bank statements generally show only a single $1,000.00 deposit to cover one or two automatic payments and fees for insufficient funds (*Id.*). Despite the dearth of banking transactions, NIT's P&L statements recorded the following income and expenses from August 2013 through December 2013:

| Month | Income | Expenses |
|---|---|---|
| August | $13,023.19 | $13,358.62 |
| September | $21,479.49 | $21,005.86 |
| October | $39,475.31 | $35,050.71 |
| November | $ 9,213.47 | $16,535.27 |
| December | $15,715.86 | $13,730.54 |

(*Id.*).

On February 25, 2014, during a hearing on Plaintiffs' Motion for Rule to Show Cause, Plaintiffs made an oral motion for an order of contempt to be entered against Ms. Bushman for violating the Citation, and this Court set a briefing schedule (docs. ## 76, 64). After briefing was complete, NIT produced bank statements from an account held by Ms. Bushman and her husband, Steven Bushman, who were doing business as Trees R Us ("Trees R Us Account") (Pl. Supp. Mem. at Ex. 1). Consequently, we granted Plaintiffs' motion to file a supplemental brief regarding these bank statements (docs. ## 70, 73). NIT elected not to file a response.

---

[5]Ms. Bushman owns the office space property that NIT uses, and NIT paid rent to her (Pl. Mem., Ex. 5 at 9:1-23, 8:13-24).

5

In an April 2014 e-mail exchange between counsel for Plaintiffs and NIT's attorney, Plaintiffs' counsel inquired about the absence of activity in NIT's bank account, despite the numbers reflected in the P&L statements: "Can you explain where NIT has been depositing its receipts and paying its bills?" (Pl. Supp. Mem., Ex. 2). Counsel for NIT responded: "As to your question, I recommend looking for increased activity in the documents I most recently produced to you (NIT1037-1161)" (*Id.*). Those documents, bearing the Bates numbers NIT1037 through 1161, include the Trees R Us Account statements, which are attached to Plaintiffs' supplemental brief at Exhibit 1 (NIT01039-01108).

The Trees R Us Account statements cover a period from January 2013 through January 2014 (Pl. Supp. Mem. at Ex. 1). From January through June 2013, the Trees R Us Account showed very little activity, with the month-end balance ranging from $1.26 to $71.82, and no more than $600.00 ever deposited (*Id.* at NIT01039-49). Beginning in July 2013 and continuing at least through January 2014, however, the Trees R Us Account displayed a noticeable up-tick in activity, with the July month-end balance showing $3,418.96, peaking at $8,458.06 in October, and showing $2,161.21 as of January 31, 2014 (*Id.* at NIT01050-1108). From July 2013 through January 2014, the following deposits or credits were made:

| Month | Total Monthly Deposit/Credit |
|---|---|
| July '13 | $ 8,391.25 |
| August '13 | $10,730.00 |
| September '13 | $20,515.27 |
| October '13 | $38,446.25 |
| November '13 | $ 7,793.97 |
| December '13 | $14,542.11 |
| January '14 | $13,722.50 |

(*Id.*). In addition, beginning in July 2013, the Trees R Us Account began reflecting payments to entities that it had not previously paid, including AT&T, NICOR Gas, Republic Services RSI Bill Pay, Flagstar Bank, Comcast, Dish Network, ComEd, "SFG LN PMT," US Cellular, and

6

Auto-Owners Insurance (*Id.*). Through July 2013, these payees had appeared in the NIT bank statements (Pl. Mem. at Ex. 6). After that date, they disappeared from the NIT bank statements (*Id.*).

### III.

A court may punish violations of the restraining provision of a citation to discover assets as follows:

> The court may punish any party who violates the restraining provision of the citation as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser.

735 ILCS 5/2-1402(f)(1). Illinois Supreme Court Rule 277, which governs supplementary proceedings, provides further that "[a]ny person who fails to obey a citation . . . may be punished for contempt." Ill. S. Ct. Rule 277(h). A party served with a citation can be held in contempt if: "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1114 (N.D. Ill. 2012) (internal quotation marks and citation omitted). The standard of proof for civil contempt is clear and convincing evidence. *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001).

NIT does not deny that after service of the Citation, Ms. Bushman continued to cause money to be transferred out of NIT's bank account. Instead, it contends that we should deny Plaintiffs' motion because (1) it was not clear to whom the Citation was directed; and (2) Ms. Bushman cannot be held individually liable for assets transferred by NIT following service of the Citation (doc. # 67: Defendant's Response to Plaintiffs' Motion for Order of Contempt and

Memorandum in Support of Defendant's Oral Motion to Terminate Citation ("Def.'s Resp.") at 3-7). In addition, NIT urges this Court to terminate the Citation, which this Court has extended through August 21, 2014 (*Id.* at 7-9). We are not persuaded by either of NIT's arguments, nor will we terminate the extended Citation.

### A.

NIT first argues that Ms. Bushman should not be held personally liable for violating the Citation because it was unclear whether she was served in her individual capacity or her capacity as NIT's corporate representative (Def.'s Resp. at 3-5). The Citation, which issued on May 30, 2014, bears the caption of the present case and is addressed to Ms. Bushman at NIT's business address:

> Linda Bushman
> Northern Illinois Transit, Inc.
> 620 E. Rock Falls Road
> Rock Falls, IL 61071

The Citation references the May 6, 2013 judgment amount of $113,794.74 and, among other things, states: "You are not required to withhold the payment of any money beyond double the amount of the judgment" (Pl. Mem. at Ex. 2 at 1).

We find that the Citation was an unambiguous command, which put Ms. Bushman on notice that she was prohibited from "making or allowing any transfer or other disposition of, or interfering with, any property not exempt from enforcement of a judgment" (Pl. Mem. at Ex. 2 at 1). The judgment had been entered against NIT, of which she is the president, only a few weeks earlier. It is not credible that she did not understand the import of the Citation. Indeed, Ms. Bushman's behavior shortly after the Citation was served–essentially shutting down NIT's bank activity in its own account–demonstrates that she understood all too well the requirements of the Citation, and actively sought to circumvent them by depositing NIT's income into and paying its

8

business creditors from the Trees R Us Account. Moreover, regardless of whether Ms. Bushman had been served in her individual capacity or in her corporate capacity, in either event, the Citation unambiguously prohibited her from transferring or disposing of the property of the judgment debtor, NIT.

**B.**

NIT's assertion that corporate officers cannot be held in contempt when the company violates a citation's proscriptions is similarly unfounded. NIT contends that the federal district court cases Plaintiffs cite all rely upon *City of Chicago v. Air Auto Leasing Co.*, 697 N.E.2d 788 (Ill. App. Ct. 1998), which NIT argues narrowly holds that a corporate officer may be held in contempt for violating a citation to discover assets only when he or she has been served *both* in an individual and a corporate capacity (Def.'s Resp. at 6-7). A review of the statutory language and subsequent caselaw, however, convinces us that this crabbed view of the Illinois appellate court's holding in *Air Auto Leasing* is unsupportable.

Certainly, the Illinois statute governing citations to discover assets grants broad authority to the courts to penalize those who violate citations: a court "may punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs." 735 ILCS 5/2-1402(f)(1). The *Air Auto Leasing* court counseled that "[s]ection 2-1402 is to be construed liberally, not only providing for the discovery of a debtor's assets and income, but also vesting the courts with 'broad powers to compel the application of discovered assets or income to satisfy a judgment.'" 697 N.E.2d at 791 (quoting *Kennedy v. Four Boys Labor Serv., Inc.*, 664 N.E.2d 1088, 1091 (Ill. App. Ct. 1996)).

Although the corporate officer in *Air Auto Leasing* was served both individually and in his corporate capacity, we do not find that fact critical to the court's holding. Indeed, the appellate court observed: "It is well-settled that corporate officers are obligated to obey judicial orders directed at their corporations." 697 N.E.2d at 792 (citing *Wilson v. United States*, 221 U.S. 361, 376 (1911) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs.")). Moreover, in *Wilson*, the case on which the *Air Auto Leasing* court relied for this proposition, the Supreme Court rejected the very argument NIT here raises in defense of Ms. Bushman's actions. There, a president of a company, who had been served with a subpoena for books held by his company, appealed the contempt order imposed upon him when he had refused to produce the books. *Wilson*, 221 U.S. at 368-72. In his appeal, he contended that the subpoena was unauthorized because it was not directed to an individual, but to the corporation. *Id.* at 372. In upholding the contempt order, the Supreme Court explained:

> [c]oncluding, then, that the subpoena was valid, and that its service imposed upon the corporation the duty of obedience, there can be no doubt that the [corporation's president] was likewise bound by it unless, with respect to the books described, he could claim a personal privilege. A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

*Id.* at 376.

This Court, along with a number of other judges from this district, have concluded that *Air Auto Leasing* supports the proposition that "corporate officers are obligated to obey judicial orders directed at their corporations, and are liable when they permit the corporation to make non-exempt payments in violation of the citation." *Laborers' Pension Fund v. A & C Envtl.*,

10

*Inc.*, No. 99 C 8300, 2005 WL 994525, at *2 (N.D. Ill. Apr. 19, 2005) (internal quotation marks omitted); *see also Shales v. Lanas Constr., Inc.*, No. 07 C 2970, 2010 WL 3842362, at *7 (N.D. Ill. Sept. 24, 2010) (Kennelly, J.) ("Illinois law permits a court to hold a corporate officer personally liable for assets transferred in violation of a citation on behalf of a corporation that is a judgment debtor"); *Divane v. Sunstrand Elec. Co.*, No. 03 C 5728, 2004 WL 1323287, at *2 (N.D. Ill. June 14, 2004) (Lefkow, J.) ("[corporate officer] would be personally liable for the transfer of assets of [judgment debtor corporation] after service of the citation on [judgment debtor corporation]"); *Laborers' Pension Fund v. Dominic Jr., Inc.*, No. 02 C 3321, 2003 WL 21310282, at **2-3 (N.D. Ill. June 5, 2003) (Brown, M.J.) ("[p]ursuant to the *Air Auto* decision, [corporate president] is personally liable for the amounts that he caused to be transferred from the accounts of [corporate judgment debtor] after the service of the citation"). NIT has not convinced us that all of these courts somehow misread *Air Auto Leasing*. Consequently, Ms. Bushman, as a corporate officer of NIT who had actual notice of the Citation, was required to comply with it. She ignored the prohibitions of the Citation at her peril; we grant Plaintiffs' motion to hold her personally liable for the amounts she caused to be transferred or paid, up to the amount of the uncollected judgment.

C.

In its brief, NIT also urges this Court to terminate the Citation (Def.'s Resp. at 7-9). On January 27, 2014, Plaintiffs filed a "Motion for Extension of Citation to Discover Assets in Supplemental Proceedings" (doc. # 58), which otherwise would have expired on February 21, 2014. Because the judgment amount remained unpaid, Plaintiffs sought to keep the Citation in place to continue the prohibition against transfers and payments (*Id.*). NIT did not file a response brief to that motion, but opposed the motion orally on the basis that "federal courts

aren't debtor's prisons" and that the purpose of the Citation–discovering NIT's assets–had already been achieved (doc. # 76: Feb. 25, 2014 Transcript of Proceedings at 17). On February 25, 2014, this Court granted the motion and extended the Citation until August 21, 2014 (*Id.*; doc. # 64). NIT now contends that Plaintiffs have not been diligent in collecting on their judgment, and that the extension of the Citation constitutes harassment (Def.'s Resp. at 8-9).

Illinois Supreme Court Rule 277(f) sets forth when a supplementary proceeding to discover assets will terminate and provides in relevant part:

> A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require.

Ill. S. Ct. Rule 277(f). We find that justice requires the continuation of the Citation in the present case, given that NIT has ignored the Citation's prohibitions and has dissipated assets that should have remained frozen.

NIT's assertion that Plaintiffs have been less than diligent in pursuing their judgment is baseless. To the contrary, the evidence instead demonstrates that Plaintiffs' collection efforts were unavailing because NIT and Ms. Bushman intentionally thwarted them. After Plaintiffs sought to garnish NIT's bank account, the activity in that account all but ceased, while activity in the Trees R Us Account simultaneously increased, closely mirroring the debit and credit amounts shown in NIT's P&L statements for that same period. This evidence convinces us that Ms. Bushman knowingly sought to evade the requirements of the Citation by hiding NIT's banking activity in the Trees R Us Account. Given NIT's attempts to circumvent Plaintiffs' collection

efforts, the extension of the Citation was appropriate and necessary; our decision to extend the Citation to August 21, 2014 stands.

Moreover, we find that the NIT and Trees R Us Account bank statements, combined with the NIT P&L statements, constitute clear and convincing evidence that Ms. Bushman violated the requirements of the Citation: initially, by continuing to pay bills out of the NIT account, and later, by transferring the NIT deposits and bill-paying activity to the Trees R Us Account. Between June 13, 2013 (when the Citation was served) and December 31, 2013, payments or withdrawals from NIT's bank account amounted to at least $18,411.01 (Pl. Mem. at Ex. 6 at 6-12, 23-24; Pl. Supp. Mem. at 9).[6] In addition, the Trees R Us payments or withdrawals in that same period, which we deem to be payments and withdrawals made on behalf of NIT, amounted to $97,425.67 (Pl. Supp. Mem. at 9 & Ex. 1). Together, these payments or withdrawals amount to at least $115,836.68. Because we are allowed to enter judgment against Ms. Bushman personally for the lesser of the unpaid balance of the judgment or the value of the assets transferred in violation of the Citation, *see* 735 ILCS 5/2-1402(f)(1); Ill. S. Ct. Rule 277(h), and because the judgment amount is the lesser, we grant Plaintiffs' motion to enter judgment against Ms. Bushman personally for the unpaid balance of the judgment, $113,794.74, along with costs. Because we grant Plaintiffs' motion to hold Ms. Bushman personally liable for the entire judgment amount, we deny their request for a complete accounting of all NIT's payments made after June 13, 2013 as unnecessary. Finally, we deny Plaintiffs' request for attorneys' fees and post-judgment interest.

---

[6]$18,411.01 is the total amount of the debits from the account reflected in the bank statements for July through December 2013, but when the fifteen checks ($4,973.69) from June 2013 (Pl. Mem. at Ex. 4) are added, the total amount is $23,383.70.

## CONCLUSION

On the facts before us, we find that Linda Bushman violated the Citation, and consequently, we grant Plaintiffs' motion for an order of contempt. Ms. Bushman not only defied the unambiguous prohibitions of the Citation by continuing to pay NIT's day-to-day business expenses, she willfully took steps to evade collection of the judgment debt by using the Trees R Us Account in an attempt to hide or protect NIT's income from collection. We therefore enter judgment against Linda Bushman, personally for the unpaid balance of the judgment, $113,794.74, plus costs. The Court directs Plaintiffs to submit documentation of the costs they seek by no later than June 16, 2014. We deny Plaintiffs' request for attorneys' fees and interest and a complete accounting.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: June 3, 2014**